## KATAMA LAND COMPANY *vs.* RICHARD HOLLEY.

Dukes County.    Oct. 30, 1879. — Oct. 21, 1880.    COLT & AMES, JJ., absent.

A statute enacted that four persons named "are hereby made a corporation," and fixed the capital stock at $50,000, with liberty to increase it by vote of the corporation to $150,000. The persons named in the statute met, organized by the choice of a chairman and clerk, accepted the act of incorporation, appointed a committee to receive subscriptions, and voted that, when subscriptions were received to the amount of $50,000, the clerk should call a meeting of the subscribers. A subscription paper was drawn up reciting the act of incorporation, stating the capital stock to be $50,000, that the signers associated themselves together to form said corporation, and agreed with the corporation to take the number of shares affixed to their respective names, and to pay therefor $100 a share at such times as should be determined on the organization of the corporation. The paper was signed by a number of persons, and the number of shares set opposite their names represented nearly $100,000. At a meeting of the subscribers, a committee appointed for the purpose reported the names of fourteen persons whose subscriptions aggregated $50,000. These names were taken promiscuously, and not in the order of their subscriptions. By-laws were then adopted. On the motion of a subscriber, not one of the fourteen, the capital stock was increased to $100,000; all the subscribers were admitted with the rights and privileges of stockholders; directors were chosen, and an assessment was levied on the capital stock, which was paid. At a subsequent meeting another assessment was levied. *Held*, in an action against one of the fourteen persons whose names were reported by the committee as above stated, to recover his proportion of this assessment, that the corporation was never legally organized, and that the action could not be maintained.

CONTRACT upon an agreement signed by the defendant and forty-one other persons, to recover an assessment made by the

plaintiff on twenty shares of stock standing in the name of the defendant. The parts of the agreement now material to be stated were as follows : " Whereas, by act of the Legislature of Massachusetts, in the year 1872, Erastus P. Carpenter, Joel H. Hills, Grafton N. Collins and Nathaniel M. Jernegan, their associates and successors, are created a corporation, under the name of the Katama Land Company, for the purpose of purchasing, holding, improving and disposing of land in the town of Edgartown, the capital stock of which corporation is fixed at fifty thousand dollars; now, therefore, the undersigned hereby associate themselves together to form said corporation, and severally subscribe for and agree each with the other and with said corporation to take the number of shares affixed to their respective names, and to pay therefor the sum of one hundred, dollars per share, at such times as shall be determined, upon the organization of said corporation : provided, however, that the subscription shall not be binding until the whole amount of said capital stock shall have been subscribed." Opposite the defendant's name were written the words " twenty shares."

Trial in the Superior Court, without a jury, before *Putnam,* J., who found for the defendant, and reported the case for the determination of this court, in substance as follows :

It appeared by the plaintiff's records that the persons named in the St. of 1872, *c.* 155,* as corporators, organized and elected Erastus P. Carpenter chairman, and Joel H. Hills clerk, voted to accept the statute, and also passed the following vote : " On motion, it was voted that N. M. Jernegan serve as a committee

---

* Section 1 of this act, which took effect on March 28, 1872, enacts that " Erastus P. Carpenter, Joel H. Hills, Grafton N. Collins, Nathaniel M. Jernegan, their associates and successors, are hereby made a corporation, by the name of the Katama Land Company, for the purpose of purchasing, holding, improving and disposing of land in the town of Edgartown."

Section 3 is as follows: " The capital stock of said corporation shall be fifty thousand dollars, with liberty to increase by vote of the corporation to an amount not exceeding one hundred and fifty thousand dollars, and shall be divided into shares of one hundred dollars each, and no share shall be issued until the amount thereof has been paid in in cash: Provided, that the said corporation shall not incur any liability until at least fifteen thousand dollars in cash shall have been paid in."

to receive subscriptions for stock, in accordance with the following agreement; and when the amount shall reach the sum of fifty thousand dollars, the clerk shall call a meeting of the subscribers, giving seven days' notice of same by mail, stating place, time and business to be transacted." In the records a copy of the agreement set out in the declaration follows the record of the above vote. The next meeting was held April 29, 1872, and the material parts of the records thereof, as shown by the record book, were as follows:

" Boston, April 20, 1872. The committee (Nathaniel M. Jernegan) chosen by the corporators to solicit subscriptions of stock of the Katama Land Company, having given me verbal notice that the amount required by the act of incorporation and vote of the corporators had been subscribed, the following notice was issued to the subscribers:

" Katama Land Company. There will be a meeting of the corporators and subscribers to the capital stock of the Katama Land Co., at the Parker House, New Bedford, on Monday evening, April 29, at 7½ o'clock, for the purpose of organizing said company. 1st. To adopt a code of by-laws to govern said company. 2d. To choose necessary officers required by said by-laws. 3d. To act upon any other business legally brought before the meeting.

" Boston, April 20, 1872.           Joel H. Hills, clerk."

Following this was an acknowledgment, dated April 29, 1872, and signed by six persons, but not by the defendant, that they had received a copy of the foregoing notice, at least seven days before.

The record then showed that at a " meeting of the subscribers to the stock of the Katama Land Company," held at New Bedford on April 29, 1872, the chairman called the meeting to order, and the clerk read the records of the corporators' meeting, and it was voted that a committee of three be appointed by the chair to report the names of subscribers to the original amount of capital stock of fifty thousand dollars; that the committee reported the names of fourteen persons, among which was that of the defendant. By-laws were then adopted. On motion of Andrew G. Pierce, (who was not one of the fourteen persons selected by the committee,) it was voted to increase the capital

stock of the company from $50,000 to $100,000, and it was also voted that all the subscribers be now admitted to the company with the rights and privileges of stockholders under the agreement. Directors were then elected; and an assessment of fifty per cent was levied upon the capital stock.

The plaintiff produced the original subscription paper, bearing subscriptions amounting to nearly $100,000, but offered no evidence of the genuineness of any of the signatures thereto except those of the defendant. The defendant admitted his signature to the agreement. The fourteen names reported by the committee at the meeting, whose duty it was to report the names of subscribers to the original amount of capital stock of fifty thousand dollars appeared to have been taken promiscuously from the names subscribed, and not in their regular order of subscription as they appeared under the agreement. The defendant was among the fourteen names reported. It appeared that there were no signatures added to the agreement after the vote increasing the capital stock, but all the signatures were on it at the time of the vote. It was admitted that assessments amounting to $75 per share had been paid by the stockholders generally, including the defendant.

It further appeared that, at a meeting of the stockholders held on October 24, 1873, a further assessment of twenty-five per cent was levied upon the capital stock of the corporation, and that the defendant refused to pay the same.

Upon the foregoing facts the defendant contended that there was no evidence of any knowledge by him of the increase of capital, and no evidence of any express agreement by him to pay, and that he was not liable.

The judge found and ruled, upon the foregoing facts, that the plaintiff was not entitled to recover. If the finding was correct, judgment was to be entered for the defendant; otherwise, a new trial to be ordered.

*G. A. Torrey,* (*J. Brown* with him,) for the plaintiff.

*T. M. Stetson,* for the defendant.

LORD, J. The plaintiff was authorized to become a corporation by the St. of 1872, *c.* 155. The persons named in the act of incorporation met on April 15, 1872, elected Erastus P. Carpenter their chairman and Joel H. Hills their clerk, and voted

to accept the statute. Assuming that the passage of the act and the formal acceptance of it by those named therein constitute a corporation *de facto* and *de jure*, its powers, duties and liabilities are quite different from those of a corporation which has been organized by an election of officers, subscription to stock, payment for the same, and certificate of shares duly issued. Such a corporation undoubtedly holds the franchise by which it is authorized to receive subscriptions to its capital stock, and enforce collection of the same. But until something further is done than merely to accept the charter, it has not become the corporation contemplated by the charter, with a capital stock of $50,000. It is clear that such was the corporation authorized by the statute, and to the stock of such a corporation they were authorized to receive subscriptions; and although that corporation, when organized and lawfully in operation, had the right by vote to increase its capital to the sum of $150,000, yet the statute did not authorize the formation of a corporation with an original capital of $150,000.

At the meeting at which the charter was accepted by the corporators, a committee was chosen to receive subscriptions to the stock of such corporation; that was to a corporation with authority to organize with a capital of $50,000, and it was to the capital stock of such a corporation that the defendant subscribed; and the first and most important question to be settled is, whether such a corporation was ever organized. If organized, and the proper steps had been taken to obtain subscriptions to its capital, and proper proceedings had thereon, it might enforce the collection of such subscription by suit.

In determining the rights of this corporation, it is necessary to look into all their proceedings from the beginning. When the corporators met, April 15, 1872, they chose a committee to receive subscriptions for stock, and voted that, when the amount of the subscription should reach $50,000, the clerk should call a meeting of the subscribers, giving seven days' notice thereof, stating time and place of meeting, and business to be transacted. On April 20, 1872, the clerk of the corporators made a record of the fact that, having received verbal notice that the amount required by the act of incorporation and vote of the corporators had been subscribed, he had issued a notice to the subscribers

calling a meeting on April 29, 1872, for the purpose of organizing the company.

Upon whom, or how, this notice was served, does not appear, except that the record showed that six subscribers acknowledged that they received such notice at least seven days before April 29. It does appear, however, that there were more than forty subscribers, and that the number of shares subscribed for exceeded nine hundred. It is quite apparent that all the subscribers were, or were intended to be, notified of the meeting; and all such subscribers took part in, or were allowed to take part in, the proceedings of the meeting.

The first action of that body of men was the selection, on motion, of a committee of three appointed by the chair, to report the names of subscribers to the original amount of the capital stock of $50,000. That committee reported the names of fourteen persons whose aggregate subscriptions amounted to $50,000. These names were "taken promiscuously from the names subscribed, and not in their regular order of subscription, as they appeared under the agreement."

That these fourteen persons thus selected might have met by themselves and organized a corporation with a capital of $50,000 divided into shares of $100 each, according to the terms of their charter, need not be questioned; nor need we discuss the question whether it would have been competent for such corporation to have increased its capital by vote at its first meeting, or whether it were necessary that a meeting should be called for that purpose. It is manifest that no such organization was made or attempted to be made by them. The record of the meeting, in its obvious signification, is the record of a meeting of all the subscribers; and all the proceedings had were the proceedings of those subscribers, and the by-laws which were adopted were adopted by that meeting of subscribers, and not by a corporation organized by the fourteen reported as original subscribers, acting by themselves as a corporation. Although this is the natural and apparently the unavoidable construction of the record, that it is the doings simply of that body of men, and not of a corporation, yet it is not left to inference or implication from the language used. The record itself makes it certain that it was a meeting of these men, and not the meeting of an organized

corporation. The motion to increase the capital stock from $50,000 to $100,000 was made by Andrew G. Pierce. Pierce appears to be one of the forty odd subscribers to stock, but he was not one of the fourteen. If this were a meeting of that corporation consisting of fourteen persons, it is entirely plain that Pierce had no rights there, that his presence was irregular, and the presiding officer of the corporation could not have acknowledged his presence or have received a motion from him. But the meeting being a meeting of persons sustaining a particular relation to the chartered corporation, and Pierce coming within that description and having received notice to attend the meeting, might properly attend and participate in the proceedings of the meeting while it retained its original character; and such character it is apparent that it did retain through its whole duration.

It follows from this review of the proceedings that the corporation created by the charter, with a capital stock of $50,000 to be divided into shares of $100 each, was never legally organized; and, not having been legally organized, no assessment could legally be made by the corporation upon the subscriptions to the capital stock of such corporation. The subscription, of itself, does not give the corporation a right to sue the subscribers to the stock. If that alone were sufficient, then, as soon as the corporators had met and accepted the act, a right of action would have accrued against each of the forty odd subscribers for the ninety odd thousand dollars. The first step to be taken by the corporation is to show that it is the corporation which the statute created, that it has done all that was necessary to be done to fulfil the terms upon which the subscriptions were made, and that the assessment laid upon the subscribers was one which the corporation had authority to lay, and that it had been properly laid. But inasmuch as no such corporation as the statute created was ever organized, all that was done in relation to the increase of capital was irregular and void, and the corporation as it exists *de facto* has no right of action against original subscribers to its stock. *Athol Music Hall* v. *Carey*, 116 Mass. 471, 473.

We do not discuss the question what is the present status of the corporation, nor its relations, or the relations of those who have participated in its proceedings, to the public. We decide only this, that the plaintiff has not shown that there has been

such an express promise to it by the defendant, in the subscription paper offered in evidence, as to enable the plaintiff to recover upon it; and it is only upon such express promise to the plaintiff that the action is founded, or that the plaintiff is entitled to recover. *Judgment for the defendant.*